GERBER, J.
 

 Kesner Etienne appeals his judgment and sentences on two counts of attempted first degree murder with a firearm, one count of burglary of an occupied dwelling with a firearm, and one count of attempted robbery with a firearm. Etienne argues that the trial court should have granted his motions for judgment of acquittal on the attempted first degree murder charges, and that the sentences were illegal. Finding no error in either the judgment or the sentences, we affirm.
 

 In the early morning hours of January 19, 2005, Etienne suggested to his friend Lopez that they rob a nearby house. Four brothers — Bernardo, David, Braulio, and Jose — -lived there with three of the brothers’ wives and six children. At around 6:30 a.m., while Bernardo’s wife Evangelina was preparing breakfast, she heard a knock on the door. She looked out the window and saw Lopez, whom she did not know. Lopez pushed in the front door, and Evangelina ran into the nearest bedroom, occupied by David and his wife and child. David came out to see what was happening. He saw Etienne holding a gun. David told the men there was no money in the house and that they should leave. Etienne hit David’s forehead with the gun, causing David to fall to the floor bleeding. Etienne began kicking David.
 

 Bernardo came out of his room next. Seeing Etienne beating David, Bernardo tried to push Etienne away. Etienne pointed the gun at Bernardo’s face and demanded money. Braulio then came out of his room with a baseball bat. Bernardo told Braulio to put the bat down because Etienne had a gun. Braulio put the bat down.
 

 While Etienne focused on Bernardo and Braulio, David managed to get to the bath
 
 *892
 
 room to wipe the blood from his face. When he came out, he saw Etienne aiming the gun at Bernardo’s head. David grabbed a mop, went towards Etienne, tried to hit him, but was not able to. Etienne shot David in the throat, paralyzing him from the chest down.
 

 Etienne ran out of the house. However, Bernardo grabbed Lopez. Etienne went back inside, pointed the gun at Bernardo and Braulio, and yelled to let Lopez go. When Braulio moved, Etienne shot Braulio in the head. The bullet fractured, but did not penetrate, Braulio’s skull. Etienne picked up the bat and hit Bernardo in the leg. When Braulio tried to get up, Eti-enne hit Braulio on the face. Etienne then threw the bat and ran out of the house with Lopez. The police later arrested Eti-enne and Lopez.
 

 At trial, after the State rested, Etienne’s counsel moved for a judgment of acquittal, stating, “[Ljooking in the evidence most favorable to the State, Mr. Etienne feels that the State has not formulated a prima facie case against him for the charges that have been formulated by the State against him in the information.” The trial court denied the motion. After the defense rested, Etienne’s counsel renewed his motion for judgment of acquittal, stating, “[A]t this point looking at the evidence in the light most favorable to the defense after the defense has closed on behalf of Mr. Etienne, I would ask for a motion for judgment of acquittal.” The trial court corrected counsel on the evidence standard and denied the motion.
 

 The jury found Etienne guilty on all charges.
 
 For the
 
 attempted first degree murder with a firearm upon David (count one), the trial court sentenced Etienne to life in prison with a mandatory minimum twenty-five years. For the attempted first degree murder with a firearm upon Brau-lio (count two), the sentence was life in prison with a mandatory minimum twenty-five years to run consecutively to count one. For the burglary of an occupied dwelling with a firearm (count three), the sentence was life in prison with a mandatory minimum twenty-five years to run concurrently to count two. For the attempted robbery with a firearm (count four), the sentence was life in prison with a mandatory minimum twenty-five years to run consecutively to count two. This appeal followed.
 

 Etienne raises three arguments, which we address in turn. First, Etienne contends that the trial court erred in denying his motions for judgment of acquittal on the attempted first degree murder charges because, in his view, the State failed to prove that he intended to cause the death of David or Braulio with a premeditated design. Etienne alleges that the evidence instead shows he fired the gun defensively in response to both men approaching him, one with a potentially deadly weapon. Our review of this argument is
 
 de novo. See Petion v. State,
 
 4 So.3d 83, 85 (Fla. 4th DCA 2009) (“The standard of review of a trial court’s ruling on a motion for judgment of acquittal is
 
 de novo.”).
 

 Etienne’s first argument lacks merit for two reasons. Procedurally, Eti-enne’s motion was insufficient because it did not “fully set forth the grounds on which it [was] based.” Fla. R.Crim. P. 3.380(b);
 
 see also Carranza v. State,
 
 985 So.2d 1199, 1202 (Fla. 4th DCA 2008) (quoting
 
 Woods v. State,
 
 733 So.2d 980, 984 (Fla.1999)) (“To preserve an argument for appeal, it must be asserted as the legal ground for the objection, exception or motion below.”). Even if Etienne had preserved the argument, the trial court correctly denied the motion. “A trial court should not grant a motion for judgment of acquittal unless there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law.”
 
 Pearce v. State,
 
 
 *893
 
 880 So.2d 561, 571 (Fla.2004). Here, the jury could have found that Etienne consciously was prepared to kill David and Braulio before either approached him because Etienne pointed the gun at the brothers from the outset.
 
 Id.
 
 at 572 (“Premeditation is a fully formed conscious purpose to kill that may be formed in a moment and need only exist for such time as will allow the accused to be conscious of the nature of the act about to be committed and the probable result of that act.”).
 

 Second, Etienne contends that the trial court erred in imposing consecutive mandatory minimum sentences on counts one, two, and four because, in his opinion, those crimes arose from a single episode. Etienne relies on several cases which hold that it is error to impose consecutive mandatory minimum sentences for the use of a firearm during a single criminal episode where the episode occurred without interruption in time and location.
 
 See, e.g., Weatherspoon v. State,
 
 624 So.2d 405, 407 (Fla. 2d DCA 1993). Our review of this argument is
 
 de novo. See Jackson v. State,
 
 925 So.2d 1168, 1170 n. 1 (Fla. 4th DCA 2006) (“[A] sentencing error constituting an illegal sentence would be reviewed
 
 de novo.”).
 

 Etienne’s second argument is unconvincing for two reasons. Factually, this case involved two separate criminal episodes. In the initial criminal episode, Etienne attempted to rob the family (count four) and attempted to murder David (count one). That episode ended when Etienne ran out of the house. A new criminal episode began when Etienne returned and attempted to murder Braulio (count two). Because counts one and two arose during separate episodes, the trial court did not err in imposing consecutive sentences on those counts. Similarly, because counts two and four arose during separate episodes, the trial court did not err in imposing consecutive sentences on those counts either.
 
 Cf. Castro v. State,
 
 472 So.2d 796, 798 (Fla. 3d DCA 1985) (“It is clear from the record that the robbery and burglary occurred inside the home, and the attempted murder of the police officer took place outside the house. Thus, the criminal activities involved two separate incidents, and consecutive mandatory sentences are permissible.”).
 

 Even if this case involved only one episode, the trial court’s sentences still were legal. The cases upon which Etienne relies all pre-date the Legislature’s 1999 amendment of section 775.087(2)(d), Florida Statutes, which added subsection (2)(d) as follows:
 

 It is the intent of the Legislature that offenders who actually possess, carry, display, use, threaten to use, or attempt to use firearms or destructive devices be punished to the fullest extent of the law, and the minimum terms of imprisonment imposed pursuant to this subsection shall be imposed for each qualifying felony count for which the person is convicted.
 
 The court shall impose any term of imprisonment provided for in this subsection consecutively to any other term of imprisonment imposed for any other felony offense.
 

 § 775.087(2)(d), Fla. Stat. (2004) (emphasis added);
 
 see also State v. Sousa,
 
 903 So.2d 923, 926 (Fla.2005) (“[Cjonsecutive mandatory minimum sentences are permissible when a defendant shoots at multiple victims.”) (citation omitted).
 

 Third, Etienne contends that the trial court erred in sentencing him to life in prison on count three, burglary of an occupied dwelling with a firearm, based on his presumption that the trial court reclassified that charge from a first degree felony to a life felony. Etienne relies upon section 775.087(l)(a), Florida Statutes (2004), which provides, in pertinent part, that a trial court shall reclassify a first degree felony to a life felony if, during the
 
 *894
 
 felony, the defendant uses a firearm, “except a felony in which the use of a ... firearm is an essential element.” Here, Etienne argues that the use of a firearm is an essential element of burglary of an occupied dwelling with a firearm and, therefore, the trial court could not reclassify that first degree felony as a life felony. Our review of this argument, too, is
 
 de novo. Jackson,
 
 925 So.2d at 1170 n. 1.
 

 Etienne’s third argument is mistaken. The trial court did not enhance count three to a life felony. Count three already was a first degree felony punishable by life imprisonment.
 
 See
 
 § 810.02(2)(b), Fla. Stat. (2004) (“Burglary is a felony of the first degree,
 
 •punishable by imprisonment for a term of years not exceeding life imprisonment
 
 ... if, in the course of committing the offense, the offender ... [i]s or becomes armed within the dwelling ....”) (emphasis added). Both Etienne’s judgment and scoresheet identify count three as a first degree felony punishable by life, which is exactly how the trial court sentenced him on that count.
 

 Ajfmned.
 

 GROSS, C.J., and DAMOORGIAN, J., concur.