# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-774

_____

JAMES ALFRED JACOBSON,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Duval County.
James Daniel, Judge.

June 8, 2018

ROWE, J.

James Alfred Jacobson appeals his conviction for second-degree murder, arguing that the trial court should have granted his motion for judgment of acquittal. Jacobson contends that the State failed to prove that he acted with ill will, hatred, spite, or evil intent and that the shooting of the victim was an accident. We affirm.

The murder victim, Bryan Edwards, lived across the street from Jacobson and his girlfriend, Rebecca Brantley. Jacobson and Brantley frequently purchased marijuana from Edwards, who grew marijuana plants in his home. But after Jacobson failed to pay for marijuana on several occasions, Edwards refused to sell to him again until he paid the $250 he owed Edwards.

Jacobson was in dire financial straits. He and Brantley lived with Brantley's grandmother. Both were unemployed and owed the grandmother $1,200 in unpaid rent. They had also been threatened with eviction.

On the day of the murder, Jacobson told his friend, Joey Waters, that he was preparing for an armed robbery in a couple of hours. Jacobson told Waters that he was going to do "a lick" (slang for robbery), invited Waters to participate in the robbery, and also asked Waters for a "burner" (slang for an untraceable gun). Waters told Jacobson that he could not provide a gun.

Later that day, Jacobson and Brantley were at the home of Brantley's brother and girlfriend, where they were using marijuana. When they ran out of drugs, Jacobson told the others he would approach Edwards and try to sell him a sawed-off shotgun in exchange for money or more marijuana. Jacobson left to see Edwards at his home. Shortly after Jacobson arrived, Edwards was shot in the face at close range with the sawed-off shotgun Jacobson had brought with him. But after Edwards was wounded, Jacobson did not call 911 or seek any assistance to aid Edwards. Instead, Jacobson ransacked Edwards's home, taking marijuana, a pistol, a gold chain, and a camera belonging to Edwards.

Jacobson then returned to the home of Brantley's brother and his girlfriend. Jacobson, Brantley, and the others smoked the marijuana Jacobson had stolen from Edwards. Jacobson confessed to Brantley that he had killed Edwards or at least gravely injured him. Jacobson told Brantley that he intended to sell the shotgun to Edwards, but when Jacobson pulled the shotgun from the bag, the shotgun went off because the hammer was already cocked. Then Jacobson threatened to kill Brantley, saying he "might as well do you, too. At least I know I'll get away with it." Brantley said Jacobson started laughing and said it was a joke.

The next day Jacobson took Brantley to a pawn shop where Brantley pawned the gold chain and camera Jacobson had stolen from Edwards's home. Later, after Jacobson and Brantley had been charged and were in custody in the medical wing of the jail,

2

Jacobson attempted to intimidate Brantley a second time, mouthing to her that "You're fucking dead."

*Standard of Review*

The appropriate standard of review on a motion for judgment of acquittal is the de novo standard. *Dunn v. State*, 206 So. 3d 802, 804 (Fla. 1st DCA 2016). If the State presents competent evidence to establish every element of the crime, then judgment of acquittal is improper. *State v. Odom*, 862 So. 2d 56, 59 (Fla. 2d DCA 2003). When reviewing a court's ruling on a motion for judgment of acquittal, the evidence must be construed in the light most favorable to the State. *Perez v. State*, 138 So. 3d 1098, 1100 (Fla. 1st DCA 2014).

*Analysis*

Jacobson argues that the trial court should have granted the motion for judgment of acquittal because his actions amounted to manslaughter by culpable negligence, not second-degree murder. Jacobson contends that the shooting was accidental and that there was no evidence to prove that he acted with ill will, hatred, spite, or evil intent when he shot Edwards. Rather, he argues the shooting was the result of culpable negligence.

The primary distinction between manslaughter and second-degree murder is that "manslaughter is committed when one kills as a result of his culpable negligence and it is murder in the second degree when one kills while perpetrating an act imminently dangerous to another and evincing a depraved mind regardless of human life." *Marasa v. State*, 394 So. 2d 544, 545 (Fla. 5th DCA 1981); § 782.04, Fla. Stat. (2013). An act is imminently dangerous to another and evinces a depraved mind when the act is such that "(1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and (2) is done from ill will, hatred, spite or an evil intent, and (3) is of such a nature that the act itself indicates an indifference to human life." *State v. Montgomery*, 39 So. 3d 252, 255-56 (Fla. 2010).

When proving the required state of mind for second-degree murder, evidence of "[p]ointing a loaded gun at the head of the

3

victim and then firing has frequently been held to be an act 'imminently dangerous to another and evincing a depraved mind regardless of human life.'" *Gibbs v. State*, 904 So. 2d 432, 435 (Fla. 4th DCA 2005). Here, Jacobson pulled out a loaded shotgun with the hammer cocked, and Edwards was shot in the head at close to point-blank range. Viewed in the light most favorable to the State, the evidence amply demonstrated an act imminently dangerous to another.

In determining whether Jacobson acted with ill will, hatred, spite, or evil intent, the trial court properly considered his conduct before and after the shooting. *Sandhaus v. State*, 200 So. 3d 112, 115 (Fla. 5th DCA 2016). The evidence at trial showed that Jacobson was desperate for money. He was jobless. He owed $1,200 in unpaid rent and had been threatened with eviction. He owed Edwards $250 and Edwards refused to sell him more marijuana until the debt was paid. Hours before the shooting, Jacobson asked his friend Waters to take part in an armed robbery and asked for an untraceable gun. Jacobson then went to see Edwards and purportedly attempted to sell Edwards a sawed-off shotgun in exchange for money or marijuana—despite Jacobson's admission that Edwards had already told him he would not sell marijuana to him until the $250 debt was paid. Considering the evidence in the light most favorable to the State, a reasonable jury could find that Jacobson harbored ill will, hatred, spite, or an evil intent toward Edwards.

Jacobson's conduct following the shooting also demonstrates that he harbored ill will toward Edwards and that the shooting was no accident. After Edwards was shot, Jacobson did not call 911 or seek medical attention for Edwards. Instead, he rummaged through Edwards's house, searched for and took Edwards's possessions that were easy to pawn, and stole marijuana. Jacobson also held onto Edwards's house key and planned to return to the house to steal more items. He then smoked the marijuana he had stolen from Edwards and confessed to Brantley that he shot Edwards. After confessing, Jacobson tried to intimidate Brantley, threatening to kill her, too, stating that he "might as well do you, too. At least I know I'll get away with it." This admission is another indication that Jacobson committed an intentional act when he shot Edwards. When viewed in the light

most favorable to the State, a reasonable jury could find that Jacobson shot Edwards in the face out of ill will, hatred, spite, or evil intent.

AFFIRMED.

B.L. THOMAS, C.J., and M.K. THOMAS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Andy Thomas, Public Defender, and Nada M. Carey, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Samuel B. Steinberg, Assistant Attorney General, Tallahassee, for Appellee.

5