# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-2029

_____

JUSTIN DAVID LANTZ,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Okaloosa County.
John T. Brown, Judge.

February 5, 2019

ROWE, J.

Around 10:00 p.m. on August 1, 2016, Justin David Lantz called police because his mother, Robin Susan Lantz, threw him out of her house. Deputies from the Okaloosa County Sheriff's Office responded to the call and found Lantz sitting on the front porch of the house. After deputies spoke with the mother, she allowed Lantz to reenter the house to gather his belongings. A deputy then observed Lantz playing with a lock on a window near the front door. Deputies saw Lantz exit the house, but they did not see him leave the property.

Hours later, between midnight and 1:00 a.m., Zachery Chumley was driving towards Brooks Bridge on Highway 98 when he observed a small, blue truck speeding and running red lights.

He testified that there was a carpet hanging out of the bed of the truck, and he observed a man driving the truck. Chumley saw the truck go under the bridge and he followed to make sure that an accident had not occurred. Chumley testified that the truck was parked at an odd angle, the driver's side door was open, the interior lights were on, and the truck bed was down. This sight prompted Chumley to call 911. Chumley later identified Lantz as the driver of the truck.

When the deputies arrived at the bridge, Lantz was standing in the water below the bridge, having descended a very steep embankment. One of the deputies spotted an object in the water. Lantz claimed the object was a shirt that he had taken off. On closer examination, the deputy determined that the object in the water was the body of a deceased woman, rolled up in a carpet. The woman was Lantz's mother.

The deputies transported Lantz to a nearby hospital because Lantz had multiple abrasions on his legs. When a doctor asked Lantz why he was in the emergency room, Lantz responded that "he was dumping his mother's body after he murdered her and was chased by the police and slid down a bank and into some barnacles." Lantz then initiated a conversation with a deputy while waiting to be interrogated and confessed to the deputy, "Nobody is going to bond me out. My mom would bond me out, but I fucking killed her." And then, while his injuries were being photographed by a crime scene technician, Lantz asked the technician if she was single and if she liked murderers.

An autopsy was performed on the victim. The medical examiner opined that the victim suffered several blunt force injuries to the right side of her head, including a broken eye socket and cheekbone. The victim also showed signs of defensive wounds to her right hand. The medical examiner testified that the victim was hit five or six times while she was in a prone position. He identified a ligature mark around her neck, which was inflicted while she was lying down. The medical examiner opined that it would have taken three to five minutes for the victim to die as a result of strangulation. He concluded that the cause of death was a combination of strangulation and blunt force injuries to the victim's head.

The jury convicted Lantz of first-degree premeditated murder, and the court sentenced him to life imprisonment without the possibility of parole.  This timely appeal follows.

*Analysis*

Lantz argues that the trial court abused its discretion by (1) granting the State's motion in limine to exclude evidence that the victim was argumentative when she was intoxicated and that she was intoxicated at the time of her death, (2) denying Lantz's request for a special jury instruction on premeditation, and (3) denying his motion for a judgment of acquittal.  Finding no error by the trial court, we affirm.

*Motion in Limine*

A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion.  *McCray v. State*, 919 So. 2d 647, 649 (Fla. 1st DCA 2006).  The court's discretion is limited by the evidence code and applicable case law.  *Id.*

Before trial, the State filed a motion in limine to exclude evidence of the victim's intoxication at the time of her death and the victim's reputation for being argumentative while intoxicated.  Defense counsel argued that the evidence was relevant because Lantz's defense was that he killed his mother after she provoked him.  The trial court granted the State's motion.  Lantz argues that the exclusion of the evidence concerning the victim's intoxication and belligerence when intoxicated deprived him of the right to present a defense to the charge against him.

Evidence of a person's character is usually inadmissible to prove that the person acted a certain way on a particular occasion.  *Savage v. State*, 99 So. 3d 1001, 1002-03 (Fla. 1st DCA 2012).  But where a defendant asserts that he acted in self-defense or there is doubt about who was the first aggressor, evidence of the victim's aggressive character may be admitted to show that the victim acted in conformance with that character trait at the time of crime.  *Id.*; *Dupree v. State*, 615 So. 2d 713, 720 (Fla. 1st DCA 1993) ("[W]e have found no Florida case in which aggressive character evidence

3

was allowed without evidence as well of self-defense or doubt regarding who was the first aggressor."). Here, Lantz never argued that he acted in self-defense or that the victim was the first aggressor. Thus, the evidence regarding the victim's reputation for being aggressive while intoxicated and her intoxication on the night of her death was properly excluded by the trial court.

Despite the fact that the evidence was properly excluded under the evidence code, Lantz, relying on the decision in *Curtis v. State*, 876 So. 2d 13 (Fla. 1st DCA 2004), argues that his constitutional right to a fair trial was violated by the exclusion of the evidence. Because Lantz did not present this argument to the trial court, it is not preserved for appellate review. *Archer v. State,* 613 So. 2d 446, 448 (Fla. 1993) ("For an issue to be preserved for appeal, . . . it 'must be presented to the lower court and the specific legal argument or ground to be argued on appeal must be part of that presentation if it is to be considered preserved.'") (quoting *Tillman v. State*, 471 So. 2d 32, 35 (Fla. 1985)). Even if the issue had been preserved, Lantz's argument is without merit.

In *Curtis*, the Court concluded that evidence of a confession by a third party that he shot the victim was not admissible under any exception to the hearsay rule. However, the Court found evidence of the third-party confession should have been admitted because the exclusion of such evidence violated the defendant's constitutional right to a fair trial. *Id.* at 19 ("[T]he courts must also consider the constitutional effect of excluding evidence in a criminal trial. In some cases, judges have a duty to admit evidence that does not fit neatly within the confines of the Evidence Code in order to protect the defendant's rights to a fair trial.").

The facts of this case are distinguishable from *Curtis*. The exclusion of evidence of the victim's intoxication and reputation does not present the same constitutional concerns as the exclusion of a confession to a crime by a third party. *See Reynolds v. State*, 934 So. 2d 1128, 1144 (Fla. 2006) (declining to extend the rationale in *Curtis* to the trial court's exclusion of hearsay statements from a third party that did not amount to a confession). Further, the holding in *Curtis* has not been extended by this Court or any other Florida court beyond the context of confessions. We decline to extend its holding here.

4

*Jury Instruction*

Lantz next argues that the trial court erred by not granting his request for modification of the standard jury instruction on premeditated homicide. We review a trial court's decision to give or withhold a jury instruction for an abuse of discretion. *Kervin v. State*, 195 So. 3d 1181, 1182 (Fla. 1st DCA 2016).

A portion of the standard jury instruction on premeditated homicide provides:

> "Killing with premeditation" is killing after consciously deciding to do so. The decision must be present in the mind at the time of the killing. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing. The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.

Fla. Std. Jury Instr. (Crim.) 7.2. Lantz asked the trial court to replace the sentence "The decision must be present in the mind at the time of the killing," with the following language:

> Premeditated design is more than mere intent to kill. It is a fully formed and conscious purpose to take human life formed upon reflection and deliberation and entertained in the mind both before and at the time of the homicide.

Lantz argued that his proposed instruction provided a better definition of the state of mind required for first-degree murder than the standard jury instruction.

To be entitled to a special jury instruction, a defendant must demonstrate that (1) the special instruction is supported by the evidence, (2) the standard instruction does not adequately cover the theory of defense, and (3) the special instruction is a correct statement of the law and not misleading or confusing. *Stephens v.*

5

*State*, 787 So. 2d 747, 756 (Fla. 2001); *Peterson v. State*, 24 So. 3d 686, 689 (Fla. 2d DCA 2009). Here, Lantz failed to establish that the standard jury instruction did not cover his theory of defense. Lantz argued that his proposed instruction was a better statement of the law but did not explain why or how the definition of premeditation in the standard jury instruction was insufficient. Because the definition of premeditation in the standard jury instruction was sufficient, the trial court properly denied the request for a special jury instruction. *See Coday v. State*, 946 So. 2d 988, 995 (Fla. 2006).

## *Judgment of Acquittal*

Finally, Lantz argues that the trial court erred by denying his motion for judgment of acquittal because the State failed to prove premeditation. A trial court's ruling on a motion for judgment of acquittal is reviewed de novo. *Jacobson v. State*, 248 So. 3d 286, 288 (Fla. 1st DCA 2018). If the State has presented competent evidence to establish every element of the crime, then judgment of acquittal is improper. *Id.*

The supreme court has defined premeditation as:

[M]ore than a mere intent to kill; it is a fully formed conscious purpose to kill. Premeditation may be formed in a moment and need only exist for such a time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act. Premeditation can be shown by circumstantial evidence.

*Glover v. State*, 226 So. 3d 795, 805–06 (Fla. 2017) (quoting *Morrison v. State*, 818 So. 2d 432, 452 (Fla. 2002)). Premeditation may be established by circumstantial evidence, including "the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted." *Id.* (quoting *Sochor v. State*, 619 So. 2d 285, 288 (Fla. 1993)); *see also Twilegar v. State*, 42 So. 3d 177, 190 (Fla. 2010) (holding that premeditation may be established by circumstantial evidence).

6

Here, the State presented competent, substantial evidence that Lantz acted with premeditation when he murdered his mother. Hours before the murder, his mother and Lantz were engaged in a dispute that required police intervention. Lantz was seen manipulating a lock on one of the front windows of his mother's house before he was escorted from the property by the police. A few hours after this confrontation, a witness saw Lantz driving in an erratic manner towards Brooks Bridge. When Lantz was approached by the police, he was standing at the water's edge. Officers observed the body of Lantz's mother floating in the water, wrapped in a carpet, a short distance from where Lantz stood.

The medical testimony established that the victim was lying down when she was hit at least five or six times. The blunt force of the blows fractured the victim's right eye socket and cheekbone. In an attempt to protect her head, the victim suffered defensive wounds to her hand. During the fight, the victim was placed in a chokehold. The medical evidence demonstrated that the victim was strangled while she was lying down. The medical examiner opined that it took three to five minutes before the victim succumbed to the strangulation.

Additionally, the State presented Lantz's own incriminating statements to the jury. Lantz admitted to an emergency room doctor that he had murdered his mother and dumped her body, he confessed to a deputy that he killed his mother, and he referred to himself as a murderer when speaking to a crime scene technician.

Based on the dispute between Lantz and the victim hours before the murder, the manipulation of the window lock, the vicious nature of the attack, the prolonged strangulation, the supine position of the victim during the attack, and Lantz's incriminating statements when he was apprehended, the evidence was sufficient for the jury to conclude that Lantz acted with premeditation when he murdered his mother. The trial court did not err in denying Lantz's motion for judgment of acquittal.

Because Lantz failed to demonstrate any error by the trial court, his conviction and sentence for first-degree murder are AFFIRMED.

RAY and OSTERHAUS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Andy Thomas, Public Defender, and Kevin Steiger, Assistant Public Defender, Tallahassee, for Appellant.

Ashley B. Moody, Attorney General, and Steven E. Woods, Assistant Attorney General, Tallahassee, for Appellee.