# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA
_____

No. 1D18-1700
_____

KAMERON HOLMES,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Duval County.
Russell Healey, Judge.

August 23, 2019

ROWE, J.

Kameron Holmes appeals his conviction for second-degree murder. He argues that his motion for judgment of acquittal should have been granted because the State failed to prove that he acted with ill will, hatred, spite, or evil intent and that the shooting of the victim was not an accident. We affirm.

*Facts*

The victim was Holmes's on-again-off-again girlfriend and the mother of Holmes's son. One afternoon, Holmes and the victim planned to go to a bar to watch a football game. They left the child at Holmes's apartment in the care of Holmes's roommate. The victim and Holmes then drove to the bar and had a few drinks.

While at the bar, Holmes received several phone calls from another woman. The victim became upset and asked Holmes to drive her home.

Before driving the victim home, they picked up their son from Holmes's apartment. On the drive to the victim's home, the victim sat in the back seat with the child.

While he was driving, Holmes claims that the victim accused him of being unfaithful to her and suggested that she should have ended their relationship. He asserts that the victim slapped his hat and his glasses off and pulled his chain necklace. He said that he told her to chill out, but she slapped his phone out of his hand when he tried to check a text message. When Holmes picked up the phone again, the victim began hitting him in the head even though Holmes repeatedly asked her to stop.

Holmes claims that he was in fear of his life and the life of his son, so he pulled out his 9mm pistol and pointed it behind him into the back seat at the victim. The gun fired, and the victim was shot.

After the shooting, Holmes did not immediately call 911 or seek any assistance to aid the victim. Instead, Holmes kept on driving, disposed of the gun, called his roommate, and returned to his apartment. Holmes told his roommate that the victim had been shot in a drive-by shooting. The roommate called 911 and began driving Holmes and the victim to the nearest hospital. The police dispatcher instructed them to pull over because police with medical training were on the way. But when police arrived, the victim was found dead.

When Holmes was questioned by the police, he gave conflicting versions of the events leading to the victim's death. First, he claimed that the victim was shot during a drive-by shooting. Next, he said the victim grabbed the gun and intentionally shot herself. Finally, Holmes admitted that his first two explanations were false and claimed instead that the shooting was accidental. Holmes explained that he and the victim were fighting when they left the bar and got back into the car. Holmes was angry that the victim was hitting him while he was driving. He claimed that when he pointed the gun at the victim, he thought

2

the safety was on, but when the victim slapped at his wrist, the gun went off.

Holmes's story that the shooting was accidental was contradicted by the State's expert witnesses. Experts testified that the bullet was fired from fewer than three inches from the victim's head, causing the bullet to enter her brain and exit through her right ear. Experts also testified that the gun had multiple working safety features, including a trigger-lock safety. Finally, contrary to Holmes's claim that the gun fired when the victim slapped at his hand, experts testified that the gun had an above-average trigger pull weight, and it would have required at least nine pounds of force to fire the gun.

Holmes moved for a judgment of acquittal, arguing that the State failed to prove that he acted with a depraved mind. The motion was denied. The jury found Holmes guilty of second-degree murder with a firearm. This timely appeal follows.

*Standard of Review*

We review an order denying a motion for judgment of acquittal de novo. *Dunn v. State*, 206 So. 3d 802, 804 (Fla. 1st DCA 2016). If the State has presented competent evidence to establish every element of the crime, then judgment of acquittal is improper. *State v. Williams*, 742 So. 2d 509, 511 (Fla. 1st DCA 1999). When reviewing a court's ruling on a motion for judgment of acquittal, the evidence must be construed in the light most favorable to the State. *Perez v. State*, 138 So. 3d 1098, 1100 (Fla. 1st DCA 2014).

*Analysis*

Holmes argues that the trial court erred when it denied his motion for judgment of acquittal because his actions amounted to at most, manslaughter, not second-degree murder. Holmes contends that the shooting was accidental and that there was no evidence to prove that he acted with ill will, hatred, spite, or evil intent when he shot the victim.

Second-degree murder is defined as "[t]he unlawful killing of a human being, when perpetrated by any act imminently

3

dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death." § 782.04(2), Fla. Stat. (2016). The primary distinction between second-degree murder and manslaughter is the intent to kill. *Jacobson v. State*, 248 So. 3d 286, 288 (Fla. 1st DCA 2018). Manslaughter is committed when one kills as a result of his culpable negligence, while second-degree murder occurs "when one kills while perpetrating an act imminently dangerous to another and evincing a depraved mind regardless of human life." *Id.* (quoting *Marasa v. State*, 394 So. 2d 544, 545 (Fla. 5th DCA 1981)). The Supreme Court of Florida has explained what constitutes evidence of a depraved mind:

> Conduct that is imminently dangerous to another and evincing a depraved mind is characterized by an act or series of acts that: (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and (2) is done from ill will, hatred, spite or an evil intent, and (3) is of such a nature that the act itself indicates an indifference to human life.

*State v. Montgomery*, 39 So. 3d 252, 255-56 (Fla. 2010).

"Although exceptions exist, the crime of second-degree murder is normally committed by a person who knows the victim and has had time to develop a level of enmity toward the victim." *Light v. State*, 841 So. 2d 623, 626 (Fla. 2d DCA 2003). And in most cases, the intent to kill must be inferred from the circumstances. *Perez v. State*, 187 So. 3d 1279, 1282 (Fla. 1st DCA 2016). A defendant's conduct before and after his use of deadly force may demonstrate the necessary intent. *Jacobson*, 248 So. 3d at 289.

The circumstances of this case demonstrate that Holmes acted with a depraved mind. Holmes and the victim were in a rocky relationship. Holmes was angry with the victim. The victim wanted to go home with their son and end her relationship with Holmes. Holmes admitted that he pulled out a loaded pistol and pointed it at the victim's head. That act alone is competent evidence that Holmes possessed the requisite intent to commit second-degree murder. *See id.* at 288 ("[p]ointing a loaded gun at the head of the victim and then firing has frequently been held to

4

be an act 'imminently dangerous to another and evincing a depraved mind regardless of human life.'" (quoting *Gibbs v. State*, 904 So. 2d 432, 435 (Fla. 4th DCA 2005))).

Even so, the State also presented evidence that the gun was fired within three inches of the victim's head and that the gun's safety features were in working condition. Holmes claims that he believed the safety was on, but his failure to check the safety followed by the act of pointing the gun into the back seat of his car toward the victim, and their three-year-old son, amply demonstrates his indifference to human life. His explanation that the gun accidentally fired when the victim slapped his wrist is called into doubt by expert testimony that it would have required nine pounds of force to engage the trigger and fire the gun.

Finally, Holmes's actions after the shooting also reflect the requisite intent to support a second-degree murder conviction. After the victim was shot, Holmes did not stop driving the car. He did not try to render aid. He did not call 911. And he did not drive to a hospital. Instead, Holmes disposed of the gun, called his roommate, and provided false reports about the shooting. These actions support a finding that Holmes possessed ill will, hatred, spite, or evil intent towards the victim and that the shooting was no accident. *Larsen v. State*, 485 So. 2d 1372, 1374 (Fla. 1st DCA 1986) (affirming second-degree murder conviction when the defendant showed "a wicked and corrupt disregard of the lives and safety of others . . .[,] a failure to appreciate social duty").

Viewed in a light most favorable to the State, the evidence was sufficient to allow the jury to determine whether Holmes possessed the ill will, hatred, spite, or evil intent necessary for a second-degree murder conviction. Thus, the trial court did not err in denying the motion for judgment of acquittal.

AFFIRMED.

KELSEY and M.K. THOMAS, JJ., concur.

5

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____


Andy Thomas, Public Defender, and Kathleen Stover, Assistant Public Defender, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Steven E. Woods, Assistant Attorney General, Tallahassee, for Appellee.

6