DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOSEPH WILLIAM HAMILTON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2023-0870

[May 29, 2024]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Sarah Willis, Judge; L.T. Case No. 502021CF001881A.

Carey Haughwout, Public Defender, and Patrick B. Burke, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Rachael Kaiman, Senior Assistant Attorney General, West Palm Beach, for appellee.

LEVINE, J.

Appellant was convicted of first-degree murder with a firearm. Appellant raises the following issues: (1) the trial court erred in denying appellant's motion for judgment of acquittal due to the state's alleged failure to prove premeditation, and (2) the trial court erred in failing to modify the standard jury instructions on justifiable homicide and premeditation and give an additional instruction regarding intent. We find all issues to be without merit, and as such, we affirm.

On February 27, 2021, around 3:00 p.m., the victim was shot on the sidewalk outside the apartment where he lived. The victim was the boyfriend of appellant's daughter. Appellant was charged with first-degree murder with a firearm. Appellant claimed self-defense.

Prior to trial, appellant requested three special jury instructions. Appellant sought to modify standard jury instruction 7.1 on justifiable homicide and standard jury instruction 7.2 on premeditation. Appellant also requested an additional special instruction on intent. The trial court denied the requests.

Several residents of the apartment complex testified at trial to hearing shots on the afternoon in question. They did not hear any arguing before the shooting. Residents saw appellant flee from the scene. Appellant was wearing a hoodie with the hood up, despite the warm weather.

Appellant gave a statement to the police, which was published to the jury. Appellant stated that he did not like the victim "from the beginning." Appellant believed the victim was a narcissist who abused and controlled his daughter. Appellant told the police that on the day of the shooting, he went to his daughter's workplace and told his daughter that she needed to leave the victim for her safety, her brother's safety, and "for the air this boy breathes," meaning the victim. Appellant then went to his son's workplace to get the key to the apartment where the victim lived with appellant's daughter and son. Appellant told his son not to go home.

Appellant went to the apartment, but the victim was not there, so appellant went to the pub for a few drinks while he waited for the victim to return home. Appellant initially denied seeing the victim on the day in question. When presented with evidence placing him at the scene, appellant stated that he went "to confront" the victim. Appellant subsequently admitted that when he returned to the apartment, appellant and the victim arrived in the parking lot at the same time. Appellant approached the victim's vehicle. The victim got out of his vehicle with his dog in one hand and a bag in the other hand. Appellant and the victim "had words," and appellant told the victim, "I promise you to the death, you will not hurt my child again."

According to appellant, the victim swung at him, and he got out of the way. Appellant then fired three or four shots. Appellant fled from the scene, dismantled the gun, and spread the pieces of the gun throughout the county. Appellant told the police that when he looked down at the victim's face and saw blood, appellant knew he "did my job." Appellant later added, "I'll do it again. I'll do it again." Throughout the interview, appellant repeatedly stated that he would rot in a 6' x 8' cell for his child and that the safety of his child was his number one priority. Appellant also made statements when he accompanied the police to look for pieces of the gun, including, "I'd do it again, same way I did it."

After the state rested, defense counsel moved for a judgment of acquittal, arguing the state had not proved premeditation. The trial court denied the motion, finding the state established a prima facie case.

The jury found appellant guilty as charged. The trial court adjudicated him guilty and sentenced him to life in prison.

As to the trial court's ruling on a motion for judgment of acquittal, we review de novo. *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002). We will not "reverse a conviction which is supported by competent, substantial evidence." *Id.* Further, "[i]f after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." *Id.* As to jury instructions, we review the trial court's decision "to give or withhold a proposed jury instruction" under the abuse of discretion standard. *Campbell v. State*, 812 So. 2d 540, 543 (Fla. 4th DCA 2002). We also "will not reverse a decision regarding an instruction in the absence of a prejudicial error that would result in a miscarriage of justice." *Lewis v. State*, 693 So. 2d 1055, 1058 (Fla. 4th DCA 1997).

## I. Premeditation

Appellant claims that there was insufficient evidence of premeditation and thus insufficient evidence to sustain the conviction of murder in the first-degree. We disagree.

"Premeditation is a fully formed conscious purpose to kill that may be formed in a moment and need only exist for such time as will allow the accused to be conscious of the nature of the act about to be committed and the possible result of that act." *Garcia v. State*, 41 So. 3d 1072, 1075 (Fla. 4th DCA 2010) (quoting *Etienne v. State*, 15 So. 3d 890, 893 (Fla. 4th DCA 2009)). Further, "[w]hether a premeditated design to kill was formed prior to a killing is a question of fact for the jury that may be established by circumstantial evidence." *Id.* (quoting *Pearce v. State*, 880 So. 2d 561, 572 (Fla. 2004)); *see also Griggs v. State*, 753 So. 2d 117, 120 (Fla. 4th DCA 1999) ("Premeditation is often impossible to prove by direct testimony and must be inferred from the circumstances surrounding the homicide. . . . '[E]vidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted.'") (quoting *Larry v. State,* 104 So. 2d 352, 354 (Fla. 1958)).

In the present case, there was competent substantial evidence supporting the jury finding of premeditation. In fact, the record is replete with competent substantial evidence demonstrating premeditation.

Appellant admitted in his recorded interview with the police that he did not like the victim from the beginning. Appellant believed that the victim was a narcissist who was abusing and controlling his daughter. On the day of the shooting, appellant went to his daughter's place of work and told her to leave the victim for her safety and her brother's safety as well as "for the air this boy breathes," referring to the victim. Then appellant went to his son's workplace to obtain a key to the apartment where his daughter, son, and the victim all lived. Appellant told his son, while retrieving the key, not to go home to his apartment.

Appellant initially denied to the police that he saw the victim on that day. When confronted with evidence to the contrary, appellant stated he went to the apartment "to confront" the victim. Appellant admitted he went armed with a gun. Appellant wore a hoodie with the hood up, even though the day was very hot, which would be consistent with trying to conceal his identity. When appellant arrived at the apartment, the victim was not there so appellant went to a local pub and had a few drinks in the interim, while waiting for the victim to return home.

Appellant returned to the apartment at the same time the victim arrived in the parking lot. Appellant approached the victim's car. The victim exited his car while holding his dog in one hand and a plastic bag in his other hand. Although appellant claimed that he and the victim argued, witnesses stated that they did not hear any arguing or yelling before they heard shots being fired. Appellant told the victim, "I promise you to the death, you will not hurt my child again." Appellant also stated to the police that when he looked down at the victim's face and saw the victim's blood, he knew he "did my job." Appellant ran from the crime scene and dismantled the gun and hid the pieces of the gun throughout the county. Finally, appellant stated that "I'd do it again, same way I did it."

The foregoing evidence was more than sufficient for the jury to conclude that appellant acted with premeditation when he murdered the victim. *See Straight v. State*, 397 So. 2d 903, 908 (Fla. 1981) ("When a suspected person in any manner attempts to escape or evade a threatened prosecution by flight, concealment, resistance to lawful arrest, or other indications after the fact of a desire to evade prosecution, such fact is admissible, being relevant to the consciousness of guilt which may be inferred from such circumstance."); *Lantz v. State*, 263 So. 3d 279, 284 (Fla. 1st DCA 2019) ("Based on the dispute between [the defendant] and the victim hours before the murder, the manipulation of the window lock, the vicious nature of the attack, the prolonged strangulation, the supine position of the victim during the attack, and [the defendant's] incriminating statements when he was apprehended, the evidence was

4

sufficient for the jury to conclude that Lantz acted with premeditation when he murdered his mother."); *Garcia*, 41 So. 3d at 1075 ("The defendant's presence near the victim's trailer at 2:00 a.m. on the day of the murder indicates that the defendant was lying in wait for the victim. Lying in wait supports a finding of premeditation.").

## II. Jury Instructions

Appellant also argues the trial court erred in denying his motion to modify two standard jury instructions and to give additional instructions on intent. "The standard jury instructions are presumed correct and are preferred over special instructions." *Stephens v. State*, 787 So. 2d 747, 755 (Fla. 2001). "Thus, [appellant] has the burden of demonstrating that the trial court abused its discretion in giving standard instructions." *Id.* at 755-56.

### A. Jury Instruction 7.1

Appellant requested a special instruction instead of standard instruction 7.1 on justifiable homicide. Standard jury instruction 7.1 provides: "The killing of a human being is justifiable homicide and lawful if *necessarily done* while resisting an attempt to murder or commit a felony upon the defendant, or to commit a felony in any dwelling house in which the defendant was at the time of the killing." (emphasis added). Appellant claims that the standard instruction does not accurately reflect section 782.02, Florida Statutes (2021), which states that "[t]he use of deadly force is justifiable when a person is resisting any attempt to murder such person or to commit any felony upon him or her or upon or in any dwelling house in which such person shall be." Appellant argues that section 782.02 does not require that the use of deadly force be "necessarily done"—a phrase contained in the standard jury instruction. Instead of the standard jury instruction, appellant requested the following special instruction: "The use of deadly force is justifiable when a person is resisting any attempt to murder such person or to commit any felony upon him or upon or in any dwelling house occupied by him. A killing that results from the justifiable use of deadly force is lawful."

The trial court did not abuse its discretion in giving the standard instruction. The trial court, in addition to the standard jury instruction for justifiable homicide, also gave standard jury instruction 3.6(f) on justifiable use of deadly force. This jury instruction details the circumstances that justify a defendant's use of deadly force and specifically instructs that "[t]he use of deadly force is justifiable if [appellant] *reasonably believed* that the force was necessary to prevent

5

imminent death or great bodily harm to himself . . . ." (emphasis added). Jury instruction 3.6(f), when read together with jury instruction 7.1, is an accurate statement of the law concerning the justifiable use of deadly force. *See Gonzalez v. State*, 49 Fla. L. Weekly D878 (Fla. 6th DCA Apr. 19, 2024) (finding that instruction 7.1, together with 3.6(f), was a complete statement of the applicable law). Because the jury instructions, when viewed as a whole, fairly stated the applicable law, no error occurred in not giving a special instruction. *See CSX Transp., Inc. v. Whittler*, 584 So. 2d 579, 586 (Fla. 4th DCA 1991) ("If jury instructions, viewed as a whole, fairly state the applicable law to the jury, the failure to give particular instructions will not be error.").

B. Jury Instruction 7.2

Appellant also argues standard jury instruction 7.2 is inadequate because it does not include that the killing be a product of "premeditated design" and claims the jury instruction is incomplete since it omits the language that premeditation requires a "settled and fixed purpose to take the life of a human being." *McCutchen v. State*, 96 So. 2d 152, 153 (Fla. 1957).

Standard instruction 7.2 provides:

> To prove the crime of First Degree Premeditated Murder, the State must prove the following three elements beyond a reasonable doubt:
>
> 1. (Victim) is dead.
>
> 2. The death was caused by the criminal act of (defendant).
>
> 3. There was a premeditated killing of (victim).
>
> *Definitions.*
>
> An "act" includes a series of related actions arising from and performed pursuant to a single design or purpose.
>
> "Killing with premeditation" is killing after consciously deciding to do so. The decision must be present in the mind at the time of the killing. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing. The period of time

6

must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.

The question of premeditation is a question of fact to be determined by you from the evidence. It will be sufficient proof of premeditation if the circumstances of the killing and the conduct of the accused convince you beyond a reasonable doubt of the existence of premeditation at the time of the killing.

Instead of the standard instruction, appellant requested the following special jury instruction:

To prove First Degree Premeditated Murder, the State must prove the following elements beyond a reasonable doubt:

1. (Victim) was killed.

2. The killing was the unlawful act of (defendant). And

3. The killing was perpetrated from a premeditated design to effect the death of (victim) or any human being.

Appellant's argument is without merit. In *Spencer v. State,* 645 So. 2d 377, 382 (Fla. 1994), the Florida Supreme Court held that the standard instruction on premeditation "addresses all of the points discussed in *McCutchen,* and thus properly instructs the jury about the element of premeditated design." *See also Kilgore v. State,* 688 So. 2d 895, 898 (Fla. 1996) (citing *Spencer* and stating that "[t]his Court has acknowledged that the standard jury instructions are sufficient to explain premeditation").

C. Jury Instruction on Intent

Appellant also requested special additional instructions on intent at the end of the first- and second-degree murder instructions. Specifically, appellant requested the following special instruction after the first-degree murder instruction: "Extremely reckless behavior is an insufficient basis from which to infer any premeditation. Moreover, an impulsive overreaction to an attack or injury is itself insufficient to prove premeditation." Appellant requested a similar special instruction after the second-degree murder instruction: "Extremely reckless behavior is an insufficient basis from which to infer any malice. Moreover, an impulsive overreaction to an attack or injury is itself insufficient to prove ill will, hatred, spite or evil intent."

Appellant failed to establish that he was entitled to the modified instructions about intent for first- and second-degree murder. The proposed instructions were not supported by the evidence. There was no evidence appellant responded to "an attack or injury" from the victim. The evidence showed that the victim, at most, swung once at appellant and missed, at a time while the victim was holding a dog and a plastic bag.

Additionally, the standard instructions adequately covered the theory of defense. The jury instructions explained in detail the elements the state had to prove for first- and second-degree murder, and both degrees of murder included the instruction on the heat of passion defense. The jury was also instructed on the justifiable use of deadly force. Appellant stated in his interview several times that he shot the victim in self-defense. Thus, the instructions adequately covered his theory of defense, and the trial court did not abuse its discretion in denying the special instructions on intent.

Further, the additional instruction on intent was not warranted in relation to the instruction on second-degree murder because the shooting by itself was not the only evidence of ill will, malice, or evil intent. *See Dorsey v. State*, 74 So. 3d 521, 524 (Fla. 4th DCA 2011) ("Florida courts have held that an impulsive overreaction to an attack or injury is *itself* insufficient to prove ill will, hatred, spite, or evil intent.") (emphasis added). Unlike in *Dorsey*, here, appellant had a grudge or ongoing dispute with the victim. Appellant stated that he did not like the victim from the beginning and that he believed the victim abused appellant's daughter.

In summary, we find that the trial court did not err in denying appellant's motion for judgment of acquittal or in giving the standard jury instructions. As such, we affirm.

*Affirmed.*

MAY and FORST, JJ., concur.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***

8