# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-0921
Lower Tribunal No. 21-CF-016057

_____

JOSE MIKE ESPICHAN,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

Appeal from the Circuit Court for Lee County.
J. Frank Porter, Judge.

July 19, 2024

STARGEL, J.

Jose Mike Espichan appeals his judgment and sentence for second-degree murder with a firearm.[1] Espichan, who claims that the shooting was in self-defense, argues that the trial court: (1) committed fundamental error by instructing the jury on the justifiable use of deadly force and a possible duty to retreat in connection therewith, without stating or defining the applicable criminal activity that Espichan

---

[1] This case was transferred from the Second District Court of Appeals to this Court on January 1, 2023.

may have been "otherwise engaged in" that would have given rise to a duty to retreat; (2) abused its discretion by prohibiting a defense witness from testifying about the victim's reputation for violence; and (3) committed reversible error by refusing to include in the jury instruction on the justifiable use of deadly force the offense of aggravated assault as a possible felony which Espichan could have been justified in using deadly force to resist. We find merit only in the third issue and conclude that Espichan is entitled to a new trial on that basis. Accordingly, we reverse.

<u>Background</u>

Espichan was charged by information with second-degree murder for the shooting death of Jesus Milian Cabrera. At trial, Cabrera's girlfriend, Caitlyn Hidalgo, testified that she and Cabrera lived with Cabrera's father at a home on Palm Lane in Fort Myers. Two weeks before the shooting, Cabrera and Hidalgo had an argument with a neighbor, Marissa Greenlee, about Hidalgo's missing dog. The argument escalated, and Hidalgo claimed that Greenlee threatened to shoot her. Hidalgo then shoved Greenlee to the ground and allegedly spat in her face. Greenlee called the police, but Hidalgo and Cabrera left before they arrived.

On September 1, 2021, Hidalgo was home with Cabrera when Cabrera's father took Cabrera's truck to go to the store. Cabrera, realizing that his father did not know that the emergency brake was on, tried to call his father, but his father didn't answer. Cabrera, Hidalgo, and two of their children got into Hidalgo's car to follow Cabrera's

2

father. They pulled up behind the truck at a stop sign on Palm Lane, and Cabrera got out to speak to his father. A car pulled behind them, which Hidalgo recognized as a white Cadillac belonging to Greenlee. Hidalgo stuck her hand out to wave at the Cadillac and made what she described as "childish" faces at Greenlee. Hidalgo could not see anyone in the passenger seat of the Cadillac, but she heard a male voice coming from the vehicle. Cabrera then approached the passenger side of the Cadillac. Hidalgo testified that Cabrera was not walking aggressively as he approached the Cadillac, and she did not see any weapons or firearms on him. Hidalgo could not see or hear what transpired while Cabrera was near the Cadillac, but then she heard gunshots. Hidalgo watched as Cabrera walked away from the vehicle, looked at her, was shot, and then fell to the ground. The Cadillac drove off.

After receiving calls about the shooting, law enforcement located the Cadillac, conducted a traffic stop, and took a female and male matching the descriptions of the suspects into custody. After being detained, Espichan gave a recorded interview to law enforcement, which was played for the jury at trial. During the interview, Espichan told the officers that he was traveling to Miami to introduce his girlfriend to his family when he saw the car and the truck leaving at the same time. Espichan told Greenlee to slow down and let them leave "because [he] already knew they were trouble." Once they left, they encountered the car and the truck blocking the street at the stop sign. The man got out of the car and started walking around. The girl in the

3

passenger seat started waving at them through the mirror, so Espichan waved back and asked her to move the car. The girl started laughing, and Espichan asked her again to move the car. The man, who had been talking to the old man in the truck, came around and started getting aggressive. Espichan told the man to move the car, and he got more aggressive, so Espichan got his gun out of the glovebox and stepped outside. Espichan told the man to back up and leave them alone, but the man kept coming toward Espichan. When the man got close, Espichan opened fire. Espichan stated that he did not see the man with any weapons, but the man was bigger than him, was coming toward him in an aggressive manner, and the man's girlfriend had previously assaulted Espichan's girlfriend. Espichan also stated that he was in fear for his life and his family's lives and that he felt he had to defend his family.

An autopsy revealed that Cabrera sustained a fatal gunshot wound to the back of his head. There were additional wounds to Cabrera's upper left shoulder from a bullet that went through his shoulder and reentered his body in the armpit area; an entrance wound on the left side of his torso; two entrance wounds on his back above the right buttock; an entrance wound to his right thigh; and wounds from a shot that entered his right leg, traveled though both legs, and exited his left thigh. The medical examiner testified that the wounds to Cabrera's thighs were caused with him facing the shooter and that the impact could have caused him to spin around. However, it was also possible that the shots to his back occurred first and caused him to spin

4

forward. Therefore, it was possible that Cabrera was advancing or walking away at the time he was first struck.

During its case-in-chief, the defense called Greenlee, who testified that during the argument about Hidalgo's missing dog, Cabrera had made threats against her and Espichan. Greenlee told Espichan about the confrontation with Hidalgo and the threats made by Cabrera. On the date of the shooting, Greenlee and Espichan were leaving the house with Greenlee's children when she pulled up behind Cabrera's truck and Hidalgo's car blocking the road at the stop sign. Cabrera got out of his car and walked up to the truck while Hidalgo was waving at Greenlee's vehicle. Cabrera then started walking aggressively towards Greenlee's vehicle. Greenlee testified that Cabrera was looking at Espichan and holding his waistband, and "[i]t looked like he was holding a gun." Espichan took his gun out of the glove box and told Cabrera to move his car so that they could go. Cabrera got closer, and Espichan warned him to back up. Cabrera kept getting closer, and when he reached the passenger door, shots were fired. Greenlee stated that she fled the scene after the shooting because she was scared.

On cross-examination, the State pressed Greenlee as to whether she saw any sort of weapon on Cabrera during the incident. Greenlee responded, "I did not see a weapon, but it looked like he was holding a gun in his waistband." When specifically

5

asked whether she saw a gun in Cabrera's waistband, Greenlee stated "I thought I did, yes."

During the charge conference, the defense requested a jury instruction on the justifiable use of deadly force. While the State did not oppose the instruction in general, it objected to the defense's request to include aggravated assault as one of the applicable felonies that Espichan could have been justified in using deadly force to resist. *See* Fla. Std. Jury Instr. (Crim.) 3.6(f) (2022). The State argued that aggravated assault was not applicable because there was no evidence that Cabrera had a deadly weapon and explained, "[I]f they present even a scintilla of evidence towards that, then it's supposed to come in, but we don't think that there's a scintilla of evidence of the agg[ravated] assault." The defense countered that Greenlee's testimony supported the inclusion of aggravated assault in the instruction because she thought that Cabrera had a gun when he approached the vehicle.

The trial court ultimately agreed with the State and refused to include aggravated assault in the self-defense instruction. However, the court granted Espichan's request to include the offense of burglary in the instruction. The given instruction based on Standard Jury Instruction 3.6(f) read in pertinent part:

> The use of deadly force is justifiable if Jose Espichan reasonably believed that the force was necessary to prevent imminent death or great bodily harm to himself while resisting:
>
> another's attempt to murder him,

6

or any attempt to commit Burglary.[2]

. . . .

Jose Espichan was justified in using deadly force if he reasonably believed that such force was necessary to prevent imminent death or great bodily harm to himself or another or the imminent commission of Burglary against himself or another. If Jose Espichan was not otherwise engaged in criminal activity and was in a place he had a right to be, then he had no duty to retreat and had the right to stand his ground.

At the conclusion of trial, the jury found Espichan guilty as charged of second-degree murder. The trial court adjudicated Espichan guilty and sentenced him to fifty years in prison, followed by a lifetime of probation. This timely appeal follows.

Analysis

A trial court's decision to give or withhold a proposed jury instruction is reviewed for an abuse of discretion. *Lantz v. State*, 263 So. 3d 279, 283 (Fla. 1st DCA 2019). However, the trial court's discretion is limited in a criminal proceeding "because a criminal defendant is entitled to have the jury instructed on his or her theory of defense if there is any evidence to support this theory, so long as the theory is recognized as valid under the law of the state." *Worley v. State*, 848 So. 2d 491, 492 (Fla. 5th DCA 2003). Florida courts have consistently held that "[a] criminal defendant is entitled to have the jury instructed on the law applicable to his or her theory of defense where there is *any* evidence to support it, no matter how weak or

---

[2] The instruction then proceeded to list the two elements constituting burglary and other definitions relevant to that offense.

7

flimsy." *Gregory v. State*, 937 So. 2d 180, 182 (Fla. 4th DCA 2006) (collecting cases). Indeed, we recently stressed the importance of giving a defendant's requested instruction on self-defense where there is *any* evidence to support the instruction, no matter how slight. *Gonzalez v. State*, 49 Fla. L. Weekly D878 (Fla. 6th DCA Apr. 19, 2024).

In the present case, Espichan argues that aggravated assault should have been included in the self-defense instruction based on Greenlee's testimony that it looked like Cabrera was holding a gun as he approached her vehicle. "Florida law justifies the use of deadly force if someone 'reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony.'" *Jackson v. State*, 253 So. 3d 738, 740 (Fla. 1st DCA 2018) (quoting § 776.012(2), Fla. Stat.); *see also* § 782.02, Fla. Stat. (2021) ("The use of deadly force is justifiable when a person is resisting any attempt to murder such person or to commit any felony upon him or her or upon or in any dwelling house in which such person shall be."). Aggravated assault is defined as an assault: (a) with a deadly weapon without intent to kill or (b) with an intent to commit a felony. § 784.021(1), Fla. Stat. (2021).[3] "For statutory purposes, a 'deadly weapon' needn't be a firearm; it is simply an object used

---

[3] The legislature included aggravated assault in the list of forcible felonies for purposes of chapter 776. § 776.08.

or threatened to be used in a way likely to produce death or great bodily harm." *State v. McGhee*, 174 So. 3d 470, 471-72 (Fla. 1st DCA 2015). While the statute provides that aggravated assault can be committed without a deadly weapon when there is an intent to commit a felony, since Espichan does not argue that version of the offense is applicable here, our analysis is limited to aggravated assault as an assault with a deadly weapon without intent to kill.

Looking to the evidence in this case, the evidence clearly suggests that Cabrera was not armed at the time of the shooting. Hidalgo's testimony and Espichan's statement to law enforcement indicated that Cabrera did not have any weapons as he approached Greenlee's vehicle, and no weapons were found on or near his body at the crime scene. Nevertheless, Greenlee testified that when Cabrera was approaching her vehicle, he was holding his waistband and that it looked like he was holding a gun. Greenlee later clarified on cross-examination that although she did not actually see a weapon, "it looked like he was holding a gun in his waistband."

In light of Greenlee's testimony, we agree with Espichan that the trial court's refusal to include aggravated assault in the self-defense instruction constituted reversible error. Regardless of how strongly other evidence may have suggested that Cabrera was unarmed at the time of the shooting, because there was at least *some* evidence that Cabrera possessed a gun when he approached the vehicle and attempted to assault Espichan, Espichan was entitled upon request to have this theory included

9

in the self-defense instruction. Though we are mindful of Espichan's statement to law enforcement that he did not see Cabrera with any weapons before opening fire, this goes to the weight the jury may have given Espichan's theory of self-defense, not whether there was a legal basis to include aggravated assault in the self-defense instruction. *See Elder v. State*, 296 So. 3d 440, 444 (Fla. 4th DCA 2020) ("[A] trial judge may not weigh the evidence before him in determining whether the instruction is appropriate; it is enough if the defense is *suggested* by the evidence presented." (quoting *Chavers v. State*, 901 So. 2d 409, 410 (Fla. 1st DCA 2005))); *Vila v. State*, 74 So. 3d 1110, 1112 (Fla. 5th DCA 2011) ("In determining whether to give a requested instruction, the trial court should consider the evidence presented without weighing the evidence, as the latter is a task for the jury."); *Dias v. State*, 812 So. 2d 487, 491 (Fla. 4th DCA 2002) ("The question of self-defense is one of fact[] and is one for the jury to decide where the facts are disputed.").

Finally, similar to our decision in *Gonzalez*, we cannot find the error in instructing the jury in this case to be harmless beyond a reasonable doubt because said error went to the heart of Espichan's sole defense. "Notwithstanding the remoteness that a different result may occur, our courts have long held that the '[f]ailure to give a standard jury instruction is reversible error when the omitted standard jury instruction goes to the heart of the defendant's case.'" *Gonzalez*, 49 Fla. L. Weekly at D881 (alteration in original) (quoting *Arboleda v. State*, 645 So. 2d 48, 50 (Fla. 3d

10

DCA 1994)). During closing arguments, the defense argued that Espichan acted reasonably in response to Cabrera aggressively approaching the vehicle and reaching for a firearm in his waistband. The defense also suggested that after the shooting, Cabrera's father disposed of Cabrera's firearm before police arrived. The trial court's ruling impermissibly narrowed Espichan's defense by removing a potential basis, however unlikely, for the jury to find that his actions were justified.

<u>Conclusion</u>

Although the evidence that Cabrera was armed with a deadly weapon as he approached Greenlee's vehicle was slight, it was sufficient under Florida law to obligate the trial court to include aggravated assault in the jury instruction on the justifiable use of deadly force. Because the trial court's failure to do so went to the heart of Espichan's defense, the error was not harmless. Accordingly, we reverse the judgment and sentence and remand for a new trial.

REVERSED and REMANDED.

WOZNIAK and MIZE, JJ., concur.


Howard L. "Rex" Dimmig, II, Public Defender, and J. Rafael Rodriguez, Special Assistant Public Defender, Bartow, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Helene S. Parnes, Senior Assistant Attorney General, Tampa, for Appellee.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF FILED

11